IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SARAH PREGLER )
 )
v. ) No. 3:20-0280
 )
ANDREW M. SAUL )
Commissioner of Social Security )

**To: The Honorable Eli J. Richardson, District Judge**

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 18), to which Defendant has filed a response. (DE 19.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (DE 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 18) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on June 27, 2016. (*See* Transcript of the Administrative Record (DE 16) at 20, 433-34.)[1] She alleged a disability onset date of October 1, 2014, and asserted that she was unable to work because of osteoarthritis, fibromyalgia, diverticulitis, carpal tunnel syndrome, spinal stenosis, a venous insufficiency, anxiety, and depression. (AR 433-35.) Plaintiff's applications were denied initially and upon reconsideration. (AR 433-34, 471-72.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Dennis Reap on June 28, 2018. (AR 38.) The ALJ denied the claim on October 31, 2018. (AR 17-19.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 30, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed the instant action and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since October 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar and cervical degenerative disease, osteoarthritis of the bilateral knees, fibromyalgia, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] The Transcript of the Administrative Record will be referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot climb ladders, ropes, scaffolds or stairs; not work around hazards such as unprotected heights and dangerous machinery; have no exposure to extreme cold; not push or pull with the bilateral lower extremities and not work with vibrations. She can understand[,] remember and carry out simple, routine tasks; have occasional interaction with supervisors and coworkers but no work with the general public; needs to work with objects as opposed to people; and can adapt to occasional changes in work routines.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 27, 1982 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 22-30.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work

based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform sedentary work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (AR 22-30.)

### C. Plaintiff's Assertions of Error

Plaintiff presents three assertions of error that will be condensed into two to avoid duplicative discussion: (1) that the ALJ failed to properly weigh Plaintiff's allegations regarding the severity of her symptoms; and (2) that the ALJ failed to properly consider the testimony of the

5

vocational expert.[2] Plaintiff therefore requests that this case be reversed and/or remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 20.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

1. **Allegations of Disabling Pain.**

The ALJ's opinion includes a finding that Plaintiff's statements concerning the nature and severity of her symptoms were only "partially consistent." (AR 28.) The ALJ concluded that although some of Plaintiff's allegations regarding her symptoms were consistent, her allegations regarding the severity of such symptoms and their purportedly limiting effects were not supported

---

[2] In reality, all three of Plaintiff's assertions of error involve the same allegation that the ALJ improperly weighed Plaintiff's testimony. However, Plaintiff's third assertion of error includes additional discussion of the vocational expert's testimony. Therefore, for purposes of clarity and organization, the Report and Recommendation will divide Plaintiff's arguments into two separate assertions of error.

6

by the evidence of record. Plaintiff argues that the ALJ erred in this finding by failing to "consider the entire case record." (DE 18-1 at 11.)

When a claimant alleges the existence of disabling symptoms, the ALJ is required to evaluate the symptoms pursuant to a two-step process originally set forth in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). The ALJ first determines whether there is objective medical evidence of an underlying condition and, if so: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* at 853.

The Commissioner later adopted essentially the same standard in Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). SSR 16-3p's predecessor, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). The Commissioner removed any reference to "credibility" in SSR 16-3p, although there appears to be no substantive change to the ALJ's analysis and nothing to suggest that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Accordingly, courts remain obligated to accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th

Cir. 2011), and claimants seeking to overturn the ALJ's decision continue to "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005).

Bearing such deference in mind, the Court finds that substantial evidence supports the ALJ's conclusions regarding the consistency of Plaintiff's allegations. Plaintiff asserts that the ALJ failed to adequately consider "overwhelming observations" from providers regarding the "degree of her pain and daily distress." (DE 18-1 at 6.) It is true that imaging studies revealed degenerative changes and disc space narrowing in the lumbar spine (AR 965), which clearly constitutes objective medical evidence of an underlying condition – as noted by the ALJ. (AR 26.) However, Plaintiff cites only two "observations" in support of her assertion, the first of which is an office note from August 2016 containing Plaintiff's own description of her symptoms and a physical exam that yield normal motor functioning findings, a normal gait, and "no objective evidence of neuropathy." (AR 1213-14.) The second note – from April 2015 – acknowledges that Plaintiff has a "history of fibromyalgia, therefore she has a baseline of pain and inflammation" (AR 811), yet this does little to advance her suggestion that the ALJ improperly evaluated her allegations because the notation provides no insight into any physical limitations caused by the condition. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment] … says nothing about the severity of the condition."). Moreover, the ALJ discussed both sets of records in the opinion (AR 26-27) and clearly acknowledged that Plaintiff suffers from fibromyalgia as evidenced by the finding that the condition represents a severe impairment. (AR 23.) Plaintiff's perfunctory reference to two office notes fails to establish the existence of any reversible error in the ALJ's assessment. *See Long v. Berryhill*, No. 1:16-CV-485-CHS, 2018 WL 1162621, at *8 (E.D. Tenn. Mar. 5, 2018) (noting that to show an ALJ's decision is not supported by substantial evidence, the claimant "must do more than simply point to countervailing evidence in the record").

Regarding mental impairments, Plaintiff suggests that the ALJ overlooked evidence indicative of anxiety, depression, anger, memory loss, and alcohol problems. (DE 18-1 at 12.) However, Plaintiff again fails to demonstrate any error in the ALJ's analysis, which specifically referenced these symptoms while highlighting the "intermittent" frequency at which they occurred. (AR 27.)[3] For example, ALJ cited medical records consistently documenting the absence of any memory problems (AR 667, 691, 697, 700, 704, 888) and noted that Plaintiff scored a 26/30 on the Montreal Cognitive Assessment in May 2017, which indicated normal cognitive functioning. (AR 27, 1382.) The ALJ also discussed Plaintiff's failure to "follow through" with any treatment with mental health providers. (AR 27.) Although failure to seek mental health treatment is not always reflective of a claimant's credibility, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989), it does weigh against Plaintiff's allegation in the instant matter given that her stated reason for eschewing treatment was the hassle of commuting to and from the provider despite her ability to drive. (AR 59). This does not represent a "good reason" sufficient to excuse an unwillingness to seek consistent treatment. *Marks v. Colvin*, No. 3:15-cv-339, 2016 WL 4411427, at *3 (S.D. Ohio Aug. 19, 2016).

Moreover, other evidence supports the ALJ's conclusion. The ALJ noted that despite Plaintiff's allegations during the administrative hearing that her medication caused multiple side effects, the medical records indicate that she has repeatedly and consistently confirmed to providers that such medication causes no side effects. (AR 907, 912, 917, 923, 928, 933, 945, 959-60, 1279, 1547, 1552, 1564, 1673, 1678, 1683-84, 1708). As highlighted by Defendant, medical

---

[3] The ALJ did not discuss any issues pertaining to alcohol, presumably because Plaintiff did not allege any such issues. Counsel's brief references an intake sheet with Murfreesboro Medical Clinic from August 2016 in which it appears that Plaintiff inadvertently checked "alcohol issues" as a symptom before correcting the mistake. (AR 1220.) Plaintiff denied any alcohol use throughout her various courses of treatment. (AR 666-67, 803, 815, 896, 901, 1211, 1307-09, 1402, 1409, 1509-10.)

records also describe Plaintiff as having been "very inconsistent with her attendance" at physical therapy (AR 1479, 1489, 1498), and that she refused to engage in continued treatment with rheumatologists despite referrals to do so (AR 786, 1327), which further supports the ALJ's adverse finding. *See Ranellucci v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012) (noting that an ALJ "could properly use Plaintiff's non-compliance with treatment as a factor in analyzing Plaintiff's credibility"). Finally, although Plaintiff suggests that the ALJ disregarded her need to use a motorized wheelchair (DE 18-1 at 13), the record indicates that her treating providers actually advised *against* the use of a wheelchair and recommended regular exercise and weight loss, as noted by the ALJ. (AR 26, 677, 681, 1622.) This, too, was a proper consideration in weighing the consistency of Plaintiff's allegations. *Cf. Blaim v. Comm'r of Soc. Sec.,* 595 F. App'x 496, 499 (6th Cir.2014) ("Even the mildness of [the claimant's] treatment—mostly pain medication, weight loss, and exercise—suggested that his ailments were comparatively mild.").

The Sixth Circuit has emphasized the steep burden a claimant must carry to overcome an ALJ's finding under SSR 16-3p: "While in theory we will not disturb an ALJ's credibility determination without a compelling reason … in practice ALJ credibility findings have become essentially unchallengeable." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (internal citations and quotations omitted). As discussed above, the ALJ in this case reasonably found that Plaintiff's allegations regarding the severity of her symptoms were inconsistent with medical evidence in the administrative record. *See Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 312 (6th Cir. 2018) ("[B]ecause the ALJ's credibility determination was based on [his] comparison of the medical evidence with [the claimant's] testimony, we do not find that it lacked substantial evidence."). For all these reasons, the Court rejects this assertion of error.

### 2. Vocational Expert Testimony.

Plaintiff next argues that the ALJ "failed to properly address" the testimony of the vocational expert who appeared at the administrative hearing. (DE 18-1 at 17.) Plaintiff faults the ALJ for failing to "provide a detailed consideration of all of Plaintiff's limitations" and argues that the ALJ was required to explain what Plaintiff describes as a "finding contrary to the [vocational expert] testimony." (*Id.* at 17, 19.)

At step five of the ALJ's evaluation process – the step at which the burden of proof shifts from the claimant to the Commissioner – the ALJ is permitted to obtain testimony from a vocational expert regarding the subject claimant's ability to perform work in the local and national economy despite any functional limitations. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007). Such testimony may constitute substantial evidence in support of an ALJ's determination that the claimant is not disabled if such testimony is given in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Of particular importance to this case, the hypothetical question need only include those limitations that the ALJ deems credible, *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003), as the ALJ "is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994).

At the hearing, the ALJ asked the vocational expert to consider the following hypothetical:

> Assume an individual with the claimant's age, education, and work experience and assume a capacity for sedentary work … except no exposure to ladders, ropes, scaffolds, or stairs, and no hazards such as unprotected heights and dangerous machinery; no exposure to extreme cold; no push/pull of the lower extremities [and] no exposure to vibrations. [The] hypothetical individual can understand, carry out and remember simple/routine tasks involving occasional interaction with co-

11

> workers and occasional interaction with supervisors and no public interaction. And the hypothetical individual needs to work with objects as opposed to people and can adapt to occasional changes in work routines.

(AR 63.) The vocational expert testified that although such an individual would not be able to perform Plaintiff's past relevant work, the individual could perform various other types of work in the national economy. (AR 63.) This hypothetical question ultimately formed the basis for the ALJ's assigned RFC. (AR 25.) Counsel for Plaintiff subsequently asked the vocational expert whether such work would be available to the same individual who would additionally need to "lay down" for 30 minutes per workday and miss multiple days of work per month. (AR 63-64.) The vocational expert responded that these added restrictions would preclude performance of the identified jobs. (AR 64.)

Plaintiff effectively argues that the ALJ committed reversible error by failing to explain why he declined to adopt the additional limitations posed by Plaintiff's counsel during the hearing. However, the Court first notes that the ALJ clearly stated in his opinion that the medical evidence "does not support more limitations" than those set forth in the RFC. (AR 25.) The ALJ then proceeded to explain this conclusion with reference to numerous mild examination findings and an evaluation of the effectiveness of Plaintiff's treatment. (AR 25-26.)

Additionally, and relatedly, Plaintiff identifies nothing in the administrative record to suggest that she would in fact be subject to the additional limitations espoused by counsel during the hearing. This is significant given that no medical provider has endorsed such restrictions. Plaintiff instead relies on her own testimony to support the limitations, which, for the reasons discussed above, was appropriately found to be at least partially inconsistent. The ALJ therefore did not err by declining to adopt the unsubstantiated limitations posed by Plaintiff's counsel at the hearing "because the ALJ is only required to incorporate, as part of that examination, evidence

that is deemed credible." *Justice v. Comm'r Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013). The Court also rejects this assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (DE 18) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge